# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Texarkana Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

MAR 2 8 2019

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION CONNECTED WITH A FOREFLIGHT USER ACCOUNT ASSOCIATED WITH EMAIL ADDRESS JOHNNIEADAMS32@HOTMAIL.COM, WHICH IS STORED AT PREMISES CONTROLLED BY FOREFLIGHT, LLC | No. 4:19-CM-08<br><br>**Filed Under Seal** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*:
**See "Attachment A"**

located in the Western District of Arkansas there is now concealed *(identify the person or describe the property to be seized)*:
**See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute, and Distribution of, Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute, and to Distribute, Controlled Substances |

The application is based on these facts: See attached affidavit of SA Michael Willett, DEA.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*
SA Michael Willett, Drug Enforcement Administration
*Affiant*

Sworn to before me and signed in my presence.

Date: March 28, 2019

*[signature]*
Judge's signature

City and state: Texarkana, Arkansas

Barry A. Bryant, United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION CONNECTED WITH A FOREFLIGHT USER ACCOUNT ASSOCIATED WITH EMAIL ADDRESS JOHNNIEADAMS 32@HOTMAIL.COM, WHICH IS STORED AT PREMISES CONTROLLED BY FOREFLIGHT, LLC | Case No. 4:19-CM-08  <br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Willett, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with [a] certain account[s] that is stored at premises controlled by ForeFlight, LLC (hereinafter "ForeFlight"), an electronic flight planning service provider headquartered at 2323 S. Shepherd Drive Suite 912, Houston, Texas, and a provider of an electronic communications service as defined by 18 U.S.C. § 2510(15). The information to be searched and seized is described in the following paragraphs and in Attachments A and B. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require ForeFlight LLC., 2323 S. Shepherd Drive Suite 912, Houston, Texas, to disclose to the government copies of the records and other information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March 1998. I have experience and training into applicable laws under Title 18. I have participated in a variety of investigations ranging from simple single party investigations, to complex conspiracies. In addition, I am a commercial rated pilot so employed by the U.S. Drug Enforcement Administration and am familiar with the procedures and techniques pilots use when organizing and planning flights. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 21 U.S.C. §§ 841, 843 & 846, and I am authorized by the Attorney General to request a search warrant.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I have probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 (Distribution of a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, and Conspiracy to commit those offenses) are located within the ForeFlight user account subscribed to by Johnnie Adams, as further described in Attachment A, (hereinafter the "SUBJECT ACCOUNT"). I submit this application and affidavit in support of a search warrant authorizing a search of the SUBJECT ACCOUNT, as further described in Attachments A and B, incorporated herein by reference.

5. The statements contained in this affidavit are based in part on oral statements made by Johnnie Adams and others that I have received directly or through other law enforcement officers, and on my experience, training and background as a Special Agent (SA) with the DEA. Because this affidavit is being submitted for the limited purpose of securing

authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant. The communications described herein are not intended as exact transcripts, but are intended to accurately summarize the nature of the communications between the persons identified.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A)). More specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. On October 29, 2018, at approximately 4:30pm, Arkansas State Police (ASP)Trooper (Trp.) Bernard Pettit observed a black Ford Explorer (TX LPN- KMC0920) following to close to a semi-truck that was in front of it. Trooper Pettit executed a traffic stop on I-30 eastbound at the 26 mile post. Trooper Pettit made contact with the driver and identified him as Curtis TROXTLE and the passenger as Johnnie ADAMS. Trooper Pettit engaged both ADAMS and TROXTLE in conversation. TROXTLE gave Trooper Pettit his driver's license and stated that the vehicle was a rental. ADAMS, the passenger, then stated he was the renter of the vehicle and showed Trooper Pettit the rental contract on his cell phone. The rental contract showed ADAMS rented the vehicle that day October 29, 2018 at 12:26 P.M. in Alexandria, LA. ADAMS went on to say his airplane broke down in Louisiana and they rented the vehicle to get home. Trooper Pettit spoke with TROXTLE and ADAMS separately and determined they had different stories regarding their travel, but were consistent regarding the use of ADAMS aircraft

for travel. ADAMS stated he had to land his airplane in Natchitoches, LA due to mechanical problems. ADAMS said they told him it would take about three days to fix it so he rented the vehicle because they did not want to wait. Trooper Pettit asked TROXTLE and ADAMS if there was anything illegal in the vehicle and they both stated no. ADAMS then said he did have a gun that belong to him in the vehicle. ADAMS then gave Trooper Pettit his concealed handgun license from the State of Kentucky. Trooper Pettit asked ADAMS for consent to search the vehicle and ADAMS stated no he would not give consent. Deputy Jeremy Hendrix, who handles a certified narcotics-detector K-9 for Nevada County Sheriff's Office, arrived to assist at the request of Trooper Pettit. Deputy Hendricks deployed his K9 to conduct a free air sniff of ADAMS' rental vehicle, after which he advised Trooper Pettit, ADAMS, and TROXTLE, that his K9 had alerted to the odor of controlled substances coming from the vehicle. Trooper Pettit informed ADAMS he now had probable cause to search the vehicle. When Trooper Pettit turned and walked towards the vehicle ADAMS yelled and said we are mules and the car is loaded. At that point ADAMS and TROXTLE were placed in custody. A subsequent search of the vehicle led to one hard-backed suitcase containing 32 individually-wrapped packages weighing approximately 2.2 pounds each. A blue Nike duffle bag was also found in the vehicle which contained 24 more individually-wrapped packages weighing approximately 2.2 pounds each. Based on his training and experience, Trooper Pettit believed that the substance in each of those packages was cocaine. A total of 56 kilograms of suspected cocaine were found in, and seized from, the vehicle. A sample of the substance contained in one of the above-described packages later field-tested positive for the presence of cocaine, a Schedule II controlled substance. Two pistols were also found in the vehicle, inside a black backpack; a Ruger LCP (SN # 371846666), which ADAMS stated was his, and an FN cal. 5.7 x 28 pistol (SN # 386303324), which ADAMS

stated was part of the delivery. Those firearms were also seized.

8. On October 29, 2018, DEA Little Rock District Office (LRDO) Special Agent Matt Newcomb, Task Force Officer Michael Blake, and your affiant, Special Agent Michael Willett, went to the ASP police station in Hope, Arkansas, to interview ADAMS and TROXTLE.

9. After being advised of his *Miranda* rights, TROXTLE stated that he has completed 5 or 6 trips with ADAMS between Detroit and McAllen transporting narcotics and money. TROXTLE stated on previous trips ADAMs would fly his plane to Detroit to pick up money from two black males names "Reggie" and "Big Boy". TROXTLE stated he thought it was marijuana they were transporting, and ADAMS had previously told him it was drugs they were picking up. TROXTLE stated ADAMS would then fly from Detroit to Somerset, Kentucky and pick up TROXTLE, and they would fly together to Mid-Valley, Texas, with the money. TROXTLE advised on one occasion he flew to Detroit with ADAMS in ADAMS plane. TROXTLE stated they would meet with the two black males in Detroit, and they would fly separately to Texas. TROXTLE stated once he and ADAMS were in Mid-Valley, Texas, they would receive the narcotics from the two black males who they met in Detroit, and would fly back to Detroit. TROXTLE stated that on this trip the plane broke down in Natchitoches, Louisiana, while they were refueling. TROXTLE stated they then rented a vehicle in Alexandria, Louisiana, and then proceeded to drive the narcotics to Somerset, Kentucky until they were stopped in Arkansas. TROXTLE stated this was the first time ADAMS had carried a gun during a trip. TROXTLE also stated "Big Boy" put a gun in the money bag which they picked up in Detroit and after completing the narcotic transaction, they brought the F& N handgun back to Detroit for "Big Boy". TROXTLE further stated in the past he was paid $10,000 by ADAMS per trip.

10. Post *Miranda*, ADAMS stated he was a mule for a drug trafficking organization. ADAMS stated his personal plane, which he normally uses for transporting the drugs, broke down in Corpus Christi, Texas approximately 6 weeks earlier. ADAMS said on this trip he drove to Detroit, Michigan, and met with two black males one known to him as "Cortez". ADAMS stated he received an unknown amount of money from "Cortez" and at that time "Cortez" also placed an F&N handgun in with the money. ADAMS stated that he then drove the money and handgun back to his home in Somerset, Kentucky. ADAMS said TROXTLE, who is also from Somerset, KY, then drove the money from Somerset to Mid-Valley, Texas. ADAMS stated he flew on United Airlines from Somerset to Corpus Christi, Texas, picked up his personal plane, which he then flew to Mid Valley, Texas, and met with TROXTLE. While in Mid-Valley, Texas, ADAMS said he met with "Cortez" who had flown on a commercial airline separately. ADAMS said he provided "Cortez" with the US Currency and the F&N handgun ADAMS transported from Michigan. ADAMS said "Cortez" met with "Mexicans" in McAllen, Texas, to receive the narcotics and then put them into a storage building in Mid-Valley area. ADAMS said TROXTLE went to the storage facility the following morning to retrieve the narcotics and F&N gun from the storage facility, then they both left Texas in ADAMS's plane. ADAMS stated the plane broke down in Natchitoches, Louisiana while they were refueling. ADAMS stated that they then rented a vehicle in Alexandria, Louisiana and proceeded to drive the narcotics and handgun to Somerset, Kentucky, but were stopped in Arkansas. ADAMS further stated that they planned to drive the narcotics from Somerset, KY to Detroit, MI, the following day. ADAMS stated he was supposed to be paid $75,000 for this trip and he would then pay TROXTLE $15,000 for the trip. ADAMS said he has a concealed carry permit, and that was why he was caring the other gun when he was stopped. During conversation with S/A Willett, ADAMS

stated that his plane was equipped with a "nice glass panel" and that he used ForeFlight on his trips. In addition to being a DEA Special Agent, I am also a licensed commercial pilot. As such, I am familiar with small, personal aircraft and their equipment. I know that when an aircraft owner or pilot, such as ADAMS, use services and systems like ForeFlight for flight planning and navigation, a significant amount of information can be retained and made available by such services/systems. Such services/systems commonly incorporate Global Positioning System (GPS) equipped elements which assist in navigating the aircraft to specific locations, and may preserve or retain digital evidence of the locations to which the aircraft has traveled in the past.

11. From knowledge obtained by using the program personally, and in talking with personnel at ForeFlight, I know that ForeFlight, LLC, stores some or all of the information associated with, or received from the user(s) of, user accounts like the SUBJECT ACCOUNT, including, but not limited to:

   a. Flight planning data associated with the account(s), including stored or preserved copies of flight planning, flight track logs, flight logbook entries, and flight origin and/or destination information, sent to and from the SUBJECT ACCOUNT;

   b. Global Positioning System (GPS) coordinates (latitude/longitude).

   c. Records or other information regarding the identification of, or tending to identify, the user(s) of the account(s), possibly including each user's full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account(s) was/were created, the length of service, the IP address(es) used to register the account(s), log-in IP addresses associated with session times and dates, account status, alternative email

    addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

  d.  Records or information regarding the type(s) of service(s) utilized;

  e.  Records or other information provided, communicated, or stored by individuals using the account(s) including, but not limited to, address books, contact and buddy lists, calendar data, pictures, and/or other files;

  f.  Records pertaining to communications between the service provider (such as ForeFlight) and any person regarding the account(s), including contacts with support services and records of actions taken;

  12.  On October 30, 2018, investigators in Louisiana working with DEA traveled to the Natchitoches Regional Airport, located at 450 Wallenberg Dr., Natchitoches, Natchitoches Parish, Louisiana, to look for the plane described by ADAMS. There, investigators located the aircraft parked on the black asphalt parking area north of the Fixed Base Operator, in front of the on-site hangars.

  13.  Investigators working with DEA were allowed to review a page from a log book kept by Natchitoches Regional Airport personnel which records the names of individuals who use the airport's "courtesy car." Contained in the log is the date of such use, and the aircraft "tail" number of the person's aircraft who is using the vehicle. I know that an aircraft's "tail" number is a unique designating number assigned to it by the Federal Aviation Administration (FAA), which is required to be painted or otherwise applied to the exterior of the aircraft on the actual tail of the aircraft or elsewhere. On the airport's courtesy car logbook page, investigators observed the name "Johnnie Adams" listed by the date "10/29/18" and the "tail" number "N7677C," which is the "tail" number of ADAMS' aircraft.

14. After I reviewed the above-described courtesy car log book page, I spoke to a member of the Natchitoches Regional Airport staff named Joey Hilton, and asked him for the "tail" number of the plane that came in the other afternoon and broke down. Joey gave me the number "N7677C."

15. DEA has sought and received information regarding ADAMS aircraft from the FAA, which was retrieved based upon the "tail" number of the aircraft. The information obtained by DEA from FAA shows that "tail" number N7677C is assigned to a 1976 Piper PA-32R-300 fixed-wing, single engine aircraft which is registered to PA32R, LLC, of Somerset, Kentucky. I have also reviewed records available online, via the Kentucky Secretary of State's office, which show that PA32R, LLC, is a Kentucky Limited Liability Company organized by Johnnie Adams of Somerset, Kentucky.

16. On November 2, 2018, I contacted the Legal Department of ForeFlight and asked what information was needed to identify an account used by an individual using their service. A representative told me they identified accounts by email address, which would be the most accurate method to locate the account. During the traffic stop of ADAMS and TROXTLE on October 29, 2018, ADAMS showed Arkansas State Police Cpl. Pettit an electronic copy of the Enterprise Rental Agreement for the Ford Explorer they were driving. On November 9, 2018, I stopped by Enterprise Rental Car located at 1607 MacArthur Dr., Alexandria, LA, and spoke with the clerk working at that time regarding the rental of the Ford Explorer by Johnnie ADAMS on October 29, 2018 from their location. The clerk showed me a screenshot of their computer system for ADAMS rental on October 29, 2018. The onscreen information for ADAMS account showed an email listed for ADAMS as johnnieadams32@hotmail.com. On November 20, 2018, I received confirmation from ForeFlight Legal Department that they did have a ForeFlight

account listed under the email johnnieadams32@hotmail.com.

17. As a licensed commercial pilot, I am also familiar with the types of electronic flight planning software often utilized in the planning and execution of flights, such as ForeFlight, which provides such a service, and the information and evidence which can commonly be gleaned from such software and services. Among the items of evidentiary interest which I have probable cause to believe are located within or associated with the SUBJECT ACCOUNT is information showing any and all locations to and from which Adams and/or his aircraft have traveled in the past, including information obtained by means of, or reference to, GPS, a satellite network capable of supplying exact coordinates (latitude and longitude) for such locations. The applied-for Search Warrant would authorize the seizure and search of any information contained within, or associated with, the SUBJECT ACCOUNT which constitutes relevant evidence of the above-described offenses, including, but not limited to, information regarding ADAMS' and/or his aircraft's prior travel. Such evidence would be relevant in that it could corroborate and/or expound upon ADAMS' admission to using his aircraft to transport controlled substances (like those seized on October 29, 2018) and funds used for the illicit purchase of such substances between Detroit, Michigan and the border/valley area of Texas, and possibly elsewhere.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

18. I anticipate executing the requested warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require ForeFlight to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

19. Based on the foregoing, and pursuant to Federal Rules of Criminal Procedure Rule 41 and Title 18 United States Code § 2703, I request that the Court issue the proposed search warrant on the account listed in Attachment A for the information requested in Attachment B. There is probable cause to believe that ForeFlight is in possession or control of records and information of the types described above, and in Attachment B, and others, relating to the user account described in Attachment A, which records and information include evidence of violations of 21 U.S.C. §§ 841 and 846 (Distribution of a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, and Conspiracy to commit those offenses). Therefore, I respectfully request this Court to issue a warrant to search all content and information associated with the ForeFlight user account described in Attachment A which is stored at premises owned, maintained, controlled, or operated by ForeFlight, and to seize the evidence, fruits, and instrumentalities described in Attachment B, which individually or collectively constitute the violations described above, or evidence thereof. I further request that the Court direct ForeFlight to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

20. Because the warrant will be served on ForeFlight, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

21. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation, the full extent of which is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because the premature disclosure of its contents may give the target an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Michael Willett
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on March 28, 2019

HON. BARRY A. BRYANT
CHIEF UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to Be Searched

This warrant applies to all information connected with any ForeFlight user account associated with the email address johnnieadams32@hotmail.com, and stored at any premises owned, maintained, controlled, or operated by ForeFlight, LLC, 2323 S. Shepherd Drive Suite 912, Houston, Texas 77019.

## ATTACHMENT B

### Particular Things to be Seized

I.   **Information to be disclosed by ForeFlight, LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any information that has been deleted but is still available to, or recoverable by, the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.   The contents of all flight planning data associated with the account(s), including stored or preserved copies of flight planning, flight track logs, flight logbook entries, and flight origin and/or destination information sent to and from the account(s);

b.   Any and all Global Positioning System (GPS) coordinates (latitude/longitude);

c.   All records or other information regarding the identification of, or tending to identify, the user(s) of the account(s), including, but not limited to, each user's full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account(s) was/were created, the length of service, the IP address(es) used to register the account(s), log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d.   The types of service utilized;

e.   All records or other information provided, communicated, or stored at any time by any individual using the account(s), including, but not limited to, address books, contact and buddy lists, calendar data, pictures, and/or other files;

  f. All records pertaining to communications between the Provider and any person regarding the account(s), including contacts with support services and records of actions taken; and

  g. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 (Distribution of a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, and Conspiracy to commit those offenses), including, but not limited to, information pertaining to the following matters:

  A. All flight planning data;

  B. All flight tracking logs;

  C. All Global Positioning System coordinates or information;

  D. All transactional information of all activity of the subscriber account(s) / described in Attachment A, and any associated account(s), including log files, dates, times, methods of connecting, ports, and IP addresses;

  E. All business records and subscriber information, or other evidence of user attribution or identity, including, but not limited to, account applications, subscriber's names, screen names, all account names associated with the subscriber(s), telephone numbers, addresses, and passwords.

    (a) Evidence indicating how and when the subscriber account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation.

(b) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by ForeFlight, LLC, and my official title is _____. I am a custodian of records for ForeFlight, LLC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of ForeFlight, LLC, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.   such records were kept in the ordinary course of a regularly conducted business activity of ForeFlight, LLC; and

c.   such records were made by ForeFlight, LLC, as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____   _____

Date                                      Signature